WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


Christina Herrera,                          )
                                            )
                        Plaintiff,          )
                                            )
        vs.                                 )
                                            )
Nancy A. Berryhill, Deputy Commissioner of  )
Social Security for Operations,             )
                                            )          No. 2:18-cv-2658-HRH
                        Defendant.          )
_____ )


O R D E R

        This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff Christina Herrera has timely filed

her opening brief,[1] to which defendant, Nancy A. Berryhill, has timely responded.[2] Oral

argument was not requested and is not deemed necessary.

Procedural Background

        On May 1, 2014, plaintiff filed an application for disability benefits under Title II of

the Social Security Act, alleging that she became disabled on April 27, 2012. Plaintiff

alleged that she was disabled due to PTSD, occipital neuralgia, chronic depression, panic

---

        [1]Docket No. 15.

        [2]Docket No. 16.

-1-

attacks, psychomotor retardation, chronic neck and head pain, and severe insomnia.[3] Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested a hearing. After an administrative hearing on December 14, 2016, an administrative law judge (ALJ) found that plaintiff was disabled from April 27, 2012 through September 24, 2015, but not disabled after September 24, 2015. Plaintiff sought review of the ALJ's partially favorable decision. On June 25, 2018, the Appeals Counsel denied plaintiff's request for review, thereby making the ALJ's March 13, 2017 decision the final decision of defendant. On August 22, 2018, plaintiff commenced this action in which she asks the court to review defendant's final decision.

## General Background

Plaintiff was born on June 28, 1974. She was 42 years old at the time of the administrative hearing. Plaintiff has a master's degree in counseling. Plaintiff and her son live with her parents. Plaintiff's past relevant work includes work as a school psychologist.

## The ALJ's Decision

This "is a so-called closed period case, meaning the ALJ found—in the same decision—that [plaintiff] had been disabled for a closed period of time and had since medically improved." Attmore v. Colvin, 827 F.3d 872, 876 (9th Cir. 2016).

The ALJ first determined that plaintiff met "the insured status requirements of the

---

[3]Admin. Rec. at 184.

Social Security Act through December 31, 2017."[4]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[5]

At step one, the ALJ found that "[f]rom April 27, 2012 through September 24, 2015, the claimant did not engage in substantial gainful activity. . . ."[6]

At step two, the ALJ found that "[f]rom April 27, 2012 through September 24, 2015, the period during which the claimant was under a disability, the claimant had the following

---

[4]Admin. Rec. at 24.

[5]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[6]Admin. Rec. at 24.

severe impairments: occipital neuralgia, major depressive disorder, post-traumatic stress disorder . . ., and generalized anxiety disorder. . . ."[7]

At step three, the ALJ found that "[f]rom April 27, 2012 through the date of this decision, the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[8]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found

> that, from April 27, 2012 through September 24, 2015, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She could have moderate exposure to loud noise. She could perform simple work with occasional interaction with the public, coworkers, and supervisors. She could have occasional changes in the workplace setting. Due to psychological symptoms, she would be off task 15 percent of the workday.[[9]]

At step four, the ALJ found that "[f]rom April 27, 2012 through September 24, 2015, the claimant was unable to perform any past relevant work. . . ."[10]

---

[7]Admin. Rec. at 24-25.

[8]Admin. Rec. at 25.

[9]Admin. Rec. at 25.

[10]Admin. Rec. at 28.

At step five, the ALJ found that "[f]rom April 27, 2012 through September 24, 2015, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed. . . ."[11]

The ALJ then considered whether plaintiff's "disability continue[d] through the date of decision."[12] An ALJ follows an "eight-step sequential evaluation process to assess whether a recipient continues to be disabled." Laura G. v. Berryhill, 357 F. Supp. 3d 1023, 1026 (C.D. Cal. 2019). The ALJ set out[13] the eight steps[14] in her decision and made the

---

[11]Admin. Rec. at 28.

[12]Admin. Rec. at 23.

[13]Admin. Rec. at 23-24.

[14]The eight steps are:

> (1) if the claimant is currently engaging in substantial gainful activity, disability ends; (2) if the claimant has an impairment or combination of impairments that meets or medically equals a listing, disability continues; (3) if the claimant does not meet or equal a listing, the ALJ will determine whether medical improvement has occurred; (4) if medical improvement has occurred, the ALJ will determine whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement—or the medical improvement is found to be unrelated to the claimant's ability to work—disability continues; (6) if there has been medical improvement related to the claimant's ability to work, the ALJ will determine whether all of the current impairments, in combination, are severe, and if not, disability ends; (7) if the claimant's impairments are considered severe, the ALJ will determine the claimant's RFC,

(continued...)

following findings.

The ALJ found that "beginning on September 24, 2015 the claimant's impairment's improved causing a lesser severity of symptoms."[15]  The ALJ found

> that beginning on September 24, 2015, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations:  She can have moderate exposure to loud noise.  She can perform simple work with occasional interaction with the public, coworkers, and supervisors.  She can have occasional changes in the workplace setting.[16]

The ALJ found "[t]he claimant's objective medical evidence, the effectiveness of treatment, and the claimant's activities of daily living[] illustrate greater functional abilities than alleged."[17]  The ALJ found that plaintiff could not perform her past relevant work.[18]  But, the ALJ found that "[a]s of September 25, 2015, considering the claimant's age, education, work

---

[14](...continued)
> and if the claimant is able to perform past relevant work, disability ends; (8) if the claimant remains unable to perform past relevant work, the ALJ will determine whether the claimant can perform other work that exists in the national economy given his or her RFC, age, education, and past relevant work experience.

<u>Lesley v. Berryhill</u>, 261 F. Supp. 3d 983, 988 (D. Ariz. 2017) (citation omitted).

[15]Admin. Rec. at 29.

[16]Admin. Rec. at 29.

[17]Admin. Rec. at 30.

[18]Admin. Rec. at 30.

experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed[,]" such as working as a marker, cleaner, or router.[19]

Thus, the ALJ concluded that plaintiff "was under a disability, as defined by the Social Security Act, from April 27, 2012, through September 24, 2015" but that plaintiff's "disability ended September 25, 2015, and the claimant has not become disabled again since that date. . . ."[20]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclu-

---

[19]Admin. Rec. at 30-31. This finding was based on the testimony of the vocational expert. Admin. Rec. at 81.

[20]Admin. Rec. at 31.

sion.'" Id. (quoting Andrews, 53 F.3d at 1039).  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision.  Id.  But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'"  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred in finding that she had medically improved as of September 24, 2015.  "Medical improvement is defined as 'any decrease in the medical severity' of a recipient's impairment and requires a 'comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)[.]'"  Attmore, 827 F.3d at 875 (quoting 20 C.F.R. § 404.1594(b)(1), (c)(1)).

Plaintiff argues that the evidence to which the ALJ cited in support of her finding of medical improvement as of September 24, 2015, does not actually show improvement.  First, the ALJ noted[21] that on October 8, 2015, plaintiff reported that her "'mood is overall pretty good'" and that she reported that "this mood has been ongoing" for the past three or four weeks.[22]  Plaintiff argues that an improved mood at one appointment or even for 3-4 weeks does not necessarily represent medical improvement.

---

[21]Admin. Rec. at 29.

[22]Admin. Rec. at 1102.

The ALJ next noted[23] that on September 13, 2016, plaintiff was taking less Xanax.[24] While plaintiff does not dispute that this was correct, she points out that she continued to take Effexor, propranolol, Trazodone, and hydroxyzine in 2016, just as she did during the closed period. Moreover, plaintiff points out that at this September 2016 appointment, she reported that "her anxiety is elevated and keeping her sleepless at night" which "causes grogginess in the morning which makes it hard for her to get her son up for school."[25] Thus, plaintiff argues that the fact that she was taking less Xanax does not necessarily mean that she had medically improved.

The ALJ also noted that psychological exams in late 2015 and 2016 showed "normal orientation, appearance, behavior, mood, affect, thought content, and intellectual function-ing."[26] But plaintiff argues that her mental status exams were largely the same both before and after September 24, 2015. For example, in June 2015, plaintiff's mental status exam[27] was exactly the same as it was on October 8, 2015.[28] And, Dr. Alexander's mental status exams, which were done during the closed period, also often showed positive findings such

---

[23]Admin. Rec. at 29.

[24]Admin. Rec. at 986.

[25]Admin. Rec. at 986.

[26]Admin. Rec. at 29 (citing Admin. Rec. at 987, 1008, 1021, 1034, 1103).

[27]Admin. Rec. at 981-982.

[28]Admin. Rec. at 1103-1104.

as normal orientation, good memory, good insight, and appropriate judgment.[29]

The ALJ also noted[30] that plaintiff's 2016 treatment notes indicated that plaintiff's PTSD was stable.[31] But, plaintiff argues that this evidence does not support a finding of a medical improvement because "a condition can be stable but disabling." Petty v. Astrue, 550 F. Supp. 2d 1089, 1099 (D. Ariz. 2008).

Plaintiff argues that the foregoing illustrates that the ALJ was "cherry-picking" from the evidentiary record to find support for the medical improvement finding, which is not appropriate. "An ALJ cannot simply 'pick out a few isolated instances of improvement over a period of months or years' but must interpret 'reports of improvement . . . with an understanding of the patient's overall well-being and the nature of her symptoms.'" Attmore, 827 F.3d at 877 (quoting Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014)). Plaintiff argues that the ALJ simply picked out the few instances of improvement in her 2015 and 2016 treatment notes and ignored all the evidence that indicated that she was still struggling with depression, anxiety, and PTSD symptoms.

There is certainly some evidence of medical improvement in 2015 and 2106, as the ALJ noted. And, there is evidence that plaintiff continued to struggle with anxiety, depression, and PTSD symptoms, as plaintiff points out. When, as here, "evidence exists to

---

[29]Admin. Rec. at 538, 540, 543, 545, 546, 548, 550.

[30]Admin. Rec. at 29.

[31]Admin. Rec. at 988, 1009, 1022, 1035.

support more than one rational interpretation, [the court] must defer to the Commissioner's decision." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

But even if the ALJ did not err in finding that plaintiff had medically improved as of September 24, 2015, the ALJ still erred in her application of the eight-step medical improvement analysis. Whether there has actually been medical improvement is only one of the eight steps. Once an ALJ finds medical improvement, the ALJ must then "determine whether the improvement is related to [the claimant's] ability to work. . . ." " Laura G, 357 F. Supp. 3d at 1027. The ALJ's decision is devoid of any such finding. Rather, the ALJ found that plaintiff had medically improved, and then the ALJ proceeded to assess plaintiff's RFC and consider whether plaintiff could do her past relevant work or whether there was any other work she could perform. The ALJ never considered whether the alleged improvement was related to plaintiff's ability to work. There is no medical opinion as to how the improvement in plaintiff's symptoms might impact her ability to work. In fact, the only medical opinion after September 24, 2015, was from Dr. Rogers, an opinion to which the ALJ gave little weight as it applied to the period after September 24, 2015. In sum, the ALJ erred because she failed to consider whether plaintiff's alleged medical improvement was related to plaintiff's ability to work.

Plaintiff next argues that the ALJ erred as to Dr. Roger's opinion. On December 12, 2016, Dr. Rogers opined that plaintiff was seriously limited but not precluded in her ability to understand/remember very short and simple instructions, ask simple questions or request

assistance; was unable to meet competitive standards in terms of her ability to remember work-like procedures, carry out very short and simple instructions, maintain attention for a two-hour segment, work in coordination with or proximity to others without being unduly distracted, perform at a consistent pace without an unreasonable number and length of rest periods, and be aware of normal hazards and take appropriate precautions; and had no useful ability to function as to her ability to maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, and deal with normal work stress.[32] Dr. Rogers also opined that plaintiff had moderate limitations in her ability to understand/remember/carry out detailed instructions, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness; and marked limitations in her ability to set realistic goals or make plans independently of others, deal with the stress of semiskilled and skilled work, interact appropriately with the general public, travel in unfamiliar places, and use public transportation.[33] Dr. Rogers also opined that plaintiff would miss more than four days per month due

---

[32]Admin. Rec. at 87-88.

[33]Admin. Rec. at 89-90.

to her mental impairments and that plaintiff could not work 50 weeks a year, 40 hours a week, 5 days a week, and 8 hours a day.[34]

Dr. Rogers was a treating physician. The ALJ gave "great weight to Dr. Rogers['] opinion] from April 27, 2012 through September 24, 2015" but "little weight to his opinion after September 24, 2015."[35] "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Dr. Rogers' opinion was contradicted by the opinion of Dr. Meier[36] and the opinion

_____

[34]Admin. Rec. at 89, 91.

[35]Admin. Rec. at 27.

[36]On August 8, 2014, Dr. Meier opined that plaintiff was not significantly limited in her ability to carry out very short and simple instructions, carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, use public transportation, and set realistic goals or make plans independently of others; and was moderately limited in her ability to maintain attention and concentration for extended periods, (continued...)

-13-

of Dr. Word.[37] Thus, the ALJ was required to give specific and legitimate reasons for giving little weight to Dr. Rogers' opinion after September 24, 2015.

The ALJ gave two reasons for rejecting Dr. Rogers' opinion as it applied to the time period after September 24, 2015. First, the ALJ found his opinion inconsistent with the fact that plaintiff had traveled to New Mexico, Texas, and Hawaii.[38] Second, the ALJ found his opinion inconsistent with plaintiff's psychological examinations after September 24, 2015,

---

[36](...continued)
work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Admin. Rec. at 158-159.

[37]On February 5, 2015, Dr. Word opined that plaintiff was not significantly limited in her ability to carry out very short and simple instructions, carry out detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take precautions, travel in unfamiliar places, use public transportation, set realistic goals, and make plans independently of others; and was moderately limited in her ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Admin. Rec. at 173-174.

[38]Admin. Rec. at 27.

which showed "normal orientation, appearance, behavior, mood, affect, thought content, and intellectual functioning. . . ."[39]

As for the first reason, that plaintiff had traveled to New Mexico, Texas, and Hawaii, this was a legitimate reason supported by substantial evidence. The ALJ cited to a September 2016 counseling note in which plaintiff reported "going to White Sands and Las Cruzes to visit friends and for son to meet friends children."[40] Plaintiff points out that in the same counseling note, it was noted that she "[r]eported times in past when she has 'bottomed out' due to issues with friend as well as son psychologically not doing well."[41] Plaintiff seems to be suggesting that this indicates that traveling was difficult for her, but that is not what this treatment note says. It says plaintiff went to visit friends and that in the past, she has had difficulties with friends. It does not say she "bottomed out" on this trip, which is what plaintiff seems to be implying. The ALJ also cited to an August 2016 treatment note in which plaintiff reported that she was going to "transfer one of her cases from NM to AZ so she could manage it better and didn't have to keep traveling to Las Cruzes."[42] This treatment note does not indicate that plaintiff had difficulty traveling, only that plaintiff would prefer not to have to keep going to New Mexico. The next example cited by the ALJ was a July

---

[39]Admin. Rec. at 27.

[40]Admin. Rec. at 985.

[41]Admin. Rec. at 985.

[42]Admin. Rec. at 997.

2016 counseling note in which plaintiff reported a 2-week trip to Texas for her grandfather's 90 birthday.[43]  Plaintiff argues that the ALJ failed to take into account that plaintiff may have been willing to make this trip even though it was difficult because it was to see her aging grandfather, but there is nothing in the record that suggests that this trip was difficult for plaintiff.  Finally, the ALJ referenced the February 2016 counseling note in which plaintiff reported that she went to Hawaii with her boyfriend during which she had a bad flashback of domestic abuse.[44]  Plaintiff seems to be suggesting that this indicates that traveling was difficult for her, but the flashback was triggered by something her boyfriend did, not the travel itself.[45]  Plaintiff's travel in 2015 and 2016 is at odds with Dr. Rogers' assessment of that plaintiff had "a marked limitation in interacting with the public [and] traveling to unfamiliar places[.]"[46]

As for the second reason given by the ALJ, that Dr. Rogers' opinion was inconsistent with plaintiff's psychological examinations after September 24, 2015, this was not a legitimate reason.  These observations during time-limited appointments with another provider are not necessarily at odds with Dr. Rogers' assessment of how plaintiff would function in a work environment.  See Gerstner v. Berryhill, 879 F.3d 257, 262 (7th Cir. 2018)

---

[43]Admin. Rec. at 1007

[44]Admin. Rec. at 1046.

[45]Admin. Rec. at 1046.

[46]Admin. Rec. at 27.

("[T]he affect and mood notes that the ALJ emphasized simply described how Gerstner presented on the days of her appointments. They were not general assessments."). But because the ALJ gave one legitimate reason for giving Dr. Rogers' opinion little weight, the ALJ did not err as to Dr. Rogers' opinion.

Finally, plaintiff argues that the ALJ erred in finding her symptom statements after September 24, 2015 less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison, 759 F.3d at 1014. "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1281). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the

most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

In considering whether there had been medical improvement, the ALJ found the "objective medical evidence, the effectiveness of treatment, and the claimant's activities of daily living[] illustrate greater functional abilities than alleged" by plaintiff.[47] Plaintiff argues that these were not clear and convincing reasons to find her statements concerning her symptoms after September 24, 2015 less than credible.

As for her daily activities, the ALJ noted plaintiff always appeared "clean and tidily dressed" at her appointments, that she was able to care for her son, and was able to travel.[48] This was not a clear and convincing reason because the ALJ failed to make specific findings as to how these daily activities would transfer to a work environment. To "conclude that a

---

[47]Admin. Rec. at 30.

[48]Admin. Rec. at 30.

claimant's daily activities warrant an adverse credibility determination," the ALJ must "make 'specific findings relating to [the daily] activities' and their transferability. . . ." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).

As for the effectiveness of treatment, the fact that plaintiff may have been "responding to treatment . . . does not provide a clear and convincing reason" for finding her symptom statements less than credible when "[n]o physician opined that any improvement would allow [her] to return to work." Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989). The second reason given by the ALJ was not clear and convincing.

As for the objective medical evidence reason, plaintiff argues that the ALJ failed to explain what specific medical evidence was inconsistent with any specific symptom testimony. "[T]he ALJ [must] specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015). Plaintiff does not dispute that the ALJ discussed the medical evidence, but she argues that the ALJ did not link this evidence to the credibility findings. But even if the ALJ made the requisite link between the medical evidence and the testimony she found not credible, the "lack of medical evidence cannot form the sole basis for discounting pain testimony[.]" Burch, 400 F.3d at 681. Because the other two reasons given by the ALJ for finding plaintiff's symptom statements not credible were not clear and convincing, this last reason

is not sufficient by itself to support the ALJ's credibility finding.

Because the ALJ erred as to medical improvement and plaintiff's credibility, the court must consider whether to remand for benefits or for further proceedings. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

Plaintiff argues that a remand for benefits would be appropriate here if her testimony is credited as true. This argument is based on the vocational expert's testimony. Nielson testified that a person who is "off task 10% or more of a workday" would not be able to

sustain employment.[49]  Nielson also testified that two or more absences from work per month will preclude full-time employment.[50]  Plaintiff's attorney asked Nielson, if in his opinion, based on plaintiff's testimony, plaintiff would be off task more than 10% of the workday and would miss more than 2 days per month, and Nielson answered, "yes."[51]

But, Nielson is not qualified to offer an opinion as to how much of the day plaintiff would be off task or how many days of work each month she would miss due to her mental impairments.  That is a question for her treating psychologist or psychiatrist or a medical expert, not a vocational expert.  Further proceedings are necessary in this case to determine whether plaintiff remained disabled after September 24, 2015.

<u>Conclusion</u>

Defendant's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 9th day of April, 2019.

/s/ H. Russel Holland
United States District Judge

---

[49]Admin. Rec. at 81.

[50]Admin. Rec. at 81.

[51]Admin. Rec. at 82.